## MORAN v. NEW YORK STATE RYS.

·(Supreme Court, Appellate Division, Fourth Department.   January 8, 1913.)

1. MASTER AND SERVANT (§ 289*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In a motorman's action for injuries caused by the derailment of a car, where there was evidence tending to show that the motorman was negligent in running the car around a curve at an excessive rate of speed, while he testified that he used the usual means to control the speed of the car, such as had always before proved sufficient at that curve, his negligence was a question for the jury, and a verdict in his favor would not be disturbed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

2. MASTER AND SERVANT (§ 278*)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In a motorman's action for injuries, evidence aside from the inference arising from the accident itself *held* sufficient to support jury's finding that at the time of the accident his car was not equipped with reasonably safe wheels or trucks.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 285*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In a motorman's action for injuries caused by the derailment of his car, where he testified that he had operated other cars around the same curve at a greater rate of speed than the car in question was running at the time, without difficulty and without having such cars leave the track, it was a question for the jury whether the car would have made the curve successfully notwithstanding the rate of speed if there had been no defect in the truck.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. § 285.*]

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by James F. Moran against the New York State Railways. From a judgment for plaintiff, and an order denying a motion to set .aside the verdict and for a new trial, defendant appeals.   Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Willis A. Matson, of Rochester, for appellant.

George D. Reed, of Rochester, for respondent.

FOOTE, J.   Plaintiff was an experienced motorman, having been in defendant's employ for 20 years.   He was injured when the car he was operating left the track at a sharp curve at the junction of Clarissa street and Mt. Hope avenue in the city of Rochester.   After leaving the track, the car ran along the pavement and struck a tree with such force as that a space the width of the tree was cut completely through the front vestibule.

[1] He has recovered a verdict upon the theory that the accident was due to a defective truck under the car.   It was defendant's claim

---

at the trial that the derailment was caused by plaintiff's negligence in running the car around this curve at a greater rate of speed than its rules permitted. There was evidence from which the jury might have found plaintiff negligent in this respect, but plaintiff's testimony was to the effect that he used the usual means to control the speed of the car such as has always before proved sufficient at this curve. We think the question of plaintiff's negligence in this respect was one of fact for the jury, and that we should not disturb the verdict on that question.

[2] Several months after the accident one of the trucks of the car was found to be defective, in that the frame and pedestal were bent and twisted. This had a tendency to cause the car to leave the rails, and not to take the switches properly. The question in the case was whether this defect existed prior to the accident. It appeared that the accident itself might have produced this condition. The jury found by answering specific questions that the car was not equipped at the time of the accident in a reasonably safe manner as to its wheels or trucks, and that it ran off the track owing to defective and unsafe equipment. Appellant claims that there is no evidence sufficient to support these findings, that the finding that the wheels or trucks were defective is based solely upon inference from the happening of the accident, and that the finding that the accident was due to these defects is a second inference based upon the first.

We think there was sufficient evidence to support the first finding, irrespective of inferences arising from the accident itself. The defective condition of the truck which was found to exist after the accident was of a character likely to cause such an accident, and the jury were instructed to determine whether it was caused by the accident or whether it existed previously.

There was no direct evidence that the truck was not in this defective condition when defendant first placed it in use some 20 days prior to the accident. Defendant's foreman, Cunningham, who assembled this truck and placed it under the car, testified that, when he "put this truck up, it was all in good shape. It went together, the parts, all in good shape," but he did not say that the frame was not bent or the pedestal twisted. There was also evidence of tests made by running the car over several lines before it was put in use, which tests did not indicate any defects in this truck. Representatives of the manufacturers of the truck were witnesses at the trial, but did not testify that the frame was not bent or the pedestal twisted at the time the truck was delivered to defendant. While in use during those 20 days trouble was experienced in operating this car at switches out of proportion, as the jury may have found, to similar trouble experienced on defendant's railway with its other cars. The average number of such troubles was shown to be only two per day on the whole system. This car during this time failed to take switches properly on at least five different occasions, or on an average of once each four days. Plaintiff's witnesses testified that there were seven such occasions, but as to two of them the witnesses were not certain whether they were before or after the acci-

dent. Assuming that they occurred on an average of once in four days before the accident, and that the general average of such occurrences on defendant's whole system was two per day, then, unless defendant had only eight cars in use on its whole system, it appears that this particular car, which was numbered 400, had some defect which interfered with its running over switches as successfully as defendant's other cars. It is true that the evidence does not show the total number of cars operated on defendant's system, but from the number which this car bore and such general facts as appeared in the testimony in reference to defendant's railway system, without reference to the knowledge possessed by the court and jury sitting in the same city in which the system was in operation, we think the jury were justified in finding that there was a defective truck upon this car solely from its performance in operation before the accident, and that such finding does not rest for its support entirely upon inference from the accident itself.

[3] Moreover, plaintiff testifies that he had operated other cars around this same curve at a greater rate of speed than the car in question was running at the time of the accident without difficulty and without having such cars leave the track. The jury were at liberty to conclude from this testimony, if they accepted it as true, that the car in question would have made this curve successfully at the time of the accident, notwithstanding the rate of speed, if there had been no defect in the truck.

If this truck had a bent frame and twisted pedestal at the time defendant received it and placed it under the car, it was a defect which, according to the testimony, reasonable inspection would have disclosed, although ordinary inspection after the truck was put under the car would not. There is no claim, however, that prior to the accident anything had happened to this car which might have produced the bending of this truck frame or the twisting of the pedestal.

We think a question of fact was presented for the jury by all the evidence as to whether there was a bent frame and twisted pedestal on this truck at the time it was installed·by defendant under this car, which defendant was negligent in failing to discover by reasonable inspection, and that the verdict of the jury upon this question is not so decidedly against the weight of the evidence as to justify setting it aside upon that ground.

We think the judgment and order appealed from should be affirmed, with costs. All concur, except McLENNAN, P. J., and KRUSE, J., who dissent in an opinion by McLENNAN, P. J.

McLENNAN, P. J. (dissenting). As I understand it, the sole question presented by this appeal is whether or not the defect in the defendant's car, which presumably caused the derailment and the injury to the plaintiff, was of such a character as that by the exercise of reasonable care on the part of the defendant in inspecting such car it ought to have been discovered. It is undisputed that the car left the track at a sharp curve on the defendant's road, that when it left the track it was going with such speed and force as to traverse the dis-

tance of 75 or 80 feet along the pavement and across the street until it struck a tree with such force that the tree was forced through the vestibule to the forward truck of the car, and in such collision the plaintiff sustained the injuries for which he seeks to recover in this action.

It appears that the truck under the car in question was purchased by the defendant from a reliable and representative firm of car builders. Apparently it was shipped to the defendant in parts and was assembled, put together by the defendant, and placed under car No. 400. This was all completed about 20 days prior to the accident. A test of the car thus equipped was then made by the defendant as to the efficiency and condition of the truck for the purposes for which it was intended. The test so made, it is claimed, was inadequate, and not such as would disclose any defects in such truck if any existed. After such test had been made, the car was put in commission to run over the different lines of the defendant. In the operation of such car it was found that occasionally when entering a switch it would leave the track. It is shown that in at least three of the five occasions that it left the switch prior to the accident it was because of the defect in the switches rather than because of the defect in the truck. In the other two instances the cause of its leaving the switch is not disclosed. But, however that may be, there is absolutely no evidence that the plaintiff or any other person connected with the operation of this car informed the defendant or any of its officers that it did not operate properly over the switches or any other part or parts of defendant's tracks prior to the accident. So that the evidence is practically uncontradicted that, so far as the defendant is concerned, none of its officers or agents, or even its employés, except the plaintiff and like employés, knew that the car in question was not capable of being operated in an entirely safe manner. Of course, it is shown as above stated that upon five occasions this car left the track at switch points, but that in no instance had such fact been called to the attention of the defendant.

At the time in question, the car, so far as appears, for the first time left the track at a point other than at the switch, viz., upon a curve, and the injury of which the plaintiff complains resulted. The evidence tends to show that because of such accident the car was badly wrecked, and that its collision with the tree, to which we have referred, would be an ample cause for its condition discovered after such accident. After the accident the car was dismantled, and an inspection was made of it, and it was discovered that the frame of the truck was bent and twisted one-half inch out of true, and it is apparently conceded that, if such condition existed before the accident, it would have been sufficient to have thrown the car off the track at the time in question, and have caused the accident which is the subject of this litigation. But, as it seems to me, it is quite as reasonable to infer from the evidence that such condition of the truck was due to the collision. This would appear to be demonstrated almost beyond a doubt from the fact that, when an attempt was first made to operate the car after being repaired following the collision, it refused to take a switch five

times out of seven, when the switch was concededly in proper order, whereas before the accident, running almost constantly for 20 days, it refused to take the switch only five times, and it is shown that upon at least three of those occasions the fault was due to the switch itself.

In my view of this case, it was purely speculation for the jury to say that the derailment in question was caused by the defect in the alignment of the truck such as was discovered when the car was afterwards dismantled; but, further, it will be remembered, and there is no contradiction in the evidence in this respect, that prior to the accident the car in question never left the track except at switch point, and that at least three of those derailments are explained by the fact that the switch over which it passed was defective, and the cause of the derailment in the other two cases at switch points is not in any manner disclosed by the evidence. So that we have the situation of a truck, or the chief parts of it, obtained by the defendant from a standard and reliable manufacturer, tested, perhaps inadequately, before being put into commission upon the defendant's road, but after such tests as were made had been made, and it was put into regular commission, so far as the defendant knew or had reason to believe, it performed every function which could be required of it. True, upon five occasions during the 20 days it was in commission before this accident it failed to keep the track at switch points, but such failure was not reported to the defendant, and the plaintiff in this case was operating the car upon at least three of those occasions and did not report the same to the defendant. So that the question is presented, Was the defendant under such circumstances negligent because it did not discover prior to the accident the defect in the car truck which concededly existed after the accident, and which, if it existed prior to the accident, would have been adequate to account for such accident?

I conclude that there was no evidence which would justify the jury in finding, as they must necessarily have found, under the charge of the court, that the defendant was guilty of negligence in failing to have discovered prior to the accident the defect in the truck, and that such defect caused the accident which is the subject of this litigation. I think the question of plaintiff's contributory negligence was for the jury, and that, under all the circumstances, the defendant has no cause for complaint as to its determination in that regard. But I am of the opinion that the jury was not warranted in finding that the defective condition found to exist after the accident did exist prior to the accident, and that, even if it did, the defendant was not shown guilty of any negligence in failing to make such an inspection as would have disclosed to it the defect, because no improper performance of the car had been reported to it.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.